WAYNE A. STANTON, ADMINISTRATOR OF THE INDIANA STATE DEPARTMENT OF PUBLIC WELFARE, INDIANA STATE DEPARTMENT OF PUBLIC WELFARE, ELIZABETH SAMKOWSKI, DIRECTOR OF THE MARION COUNTY DEPARTMENT OF PUBLIC WELFARE, AND COUNTY DEPARTMENT OF PUBLIC WELFARE OF MARION COUNTY v. GLORIA PRICE, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILDREN AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED.

[No. 1-1177A277. Filed December 29, 1978. Rehearing denied April 27, 1979.]

*Theodore L. Sendak*, Attorney General of Indiana, *Donald P. Bogard*, Chief Counsel, *Robert B. Wente*, Deputy Attorney General, for appellants.

*David F. Shadel, Marie F. Failinger, Legal Services Organization of Indiana, Inc.*, for appellees.

LYBROOK, P.J.— This is a class action brought by Gloria Price (Gloria) on behalf of herself and on behalf of others similarly situated, whereby the class sought declaratory and injunctive relief against the defendants, who are members of state and county welfare agencies. Gloria alleged, and the trial court found, that sections 353.15 and 353.16 of the Indiana Aid to Families with Dependent Children Manual violate 42 U.S.C. § 601 *et seq.*, as well as 29 C.F.R. § 56.4(a)(8)[1] and 45 C.F.R. 233.11(a)(5).[2] Thus, contends Gloria, these Indiana manual sections violate the supremacy clause of the U.S. Constitution, Art. 6, § 2. We agree; the trial court's decision accordingly is affirmed.

## FACTS

Prior to September, 1975, Gloria worked at Westview Hospital at an hourly wage of $2.95. She then decided to return to school in order to earn a degree in nursing which would qualify her for a more rewarding career. Gloria voluntarily terminated her employment at the hospital and enrolled full-time in a two-year nursing program at Indiana Central University. Upon completion of the program, she would be employable at $5.35 per hour.

At all relevant times, Gloria, who had been divorced, had the care and custody of her two minor children, one of whom was under the age of six. Upon terminating her employment, she applied for AFDC benefits from the Marion County Department of Public Welfare. She received AFDC in the amount of $125 per month from September, 1975, through May, 1976, for her two children; however, she did not receive any AFDC for herself. Although the maximum AFDC in Indiana is $200 per month for a mother and two children, the defendants granted Gloria only $125 per month because she voluntarily had terminated her employment, contrary to §§ 353.15 and 353.16 of the Indiana AFDC manual, which provide:

---

1. This section has been transferred and now appears at 29 C.F.R. § 56.2.

2. The substance of this regulation now appears at 45 C.F.R. 224.20.

"353.15 Acceptance of Employment or Training

Acceptance of employment or training is required of employable members of the AFDC assistance group under certain circumstances. In addition to those recipients who are expected to participate in the WIN program which implements the Talmadge Amendment, other parents or essential needy relatives are expected to seek employment or accept training for employment if certain criteria are met. The criteria that must be met are:

the recipient's physical presence in the home is not required to give full time care to the children, or other essential family members; the recipient is physically and emotionally able to be employed outside the home;

there is suitable employment for which the recipient is qualified in the community where family lives; and

there is adequate supervision of the children while the recipient is away from the home.

When it appears that the member of the assistance group should plan to work, services shall be given by the County Department to assist him/her in securing appropriate employment or in obtaining training for employment.

*If it is determined after careful evaluation that the above criteria are met but the member of the assistance group refuses to take employment, or accept training, unless he/she has a justifiable reason for refusal, he/she shall not receive assistance until the necessary steps are taken.* However assistance shall be granted or continued to the eligible children in the home. The decision as to whether the reason for refusal is justifiable shall be an administrative decision made by the County Director or a designated supervisory staff member." (Emphasis added.)

"353.16 Continuance of Employment or Training

*Continuance of employment or training is required also of employable members of the AFDC assistance group. If a member of the assistance group quits a job or leaves a trainng program without a justifiable reason (see item 353.15 above) such person shall not be eligible for assistance until he/she again obtains employment for which the remuneration received is comparable to that received in the previous employment or until he/she reenters the training program.* This includes the individual who leaves suitable employment to obtain training and there is little or no likelihood that such training will result in a better job for the individual.

If a member of the AFDC assistance group refuses to accept an offer of suitable employment after completing a training program, and it is determined after careful evaluation that such refusal cannot be substantiated as acceptable, such individual shall not be eligible to receive assistance until such time as he/she obtains employment comparable to that which was originally offered him/her." (Emphasis added.)

Having been denied the $75 per month to which she felt entitled, Gloria then filed suit.

The Indiana manual sections quoted above were promulgated to allow the State to participate in the Federal Work Incentive (WIN) program. The purpose of the regulations primarily is to implement the federal program in Indiana, thereby assuring that federal funds will be available to support the state administered AFDC program.

The trial court found, in granting summary judgment in favor of Gloria, that under the Federal Social Security Act, 42 U.S.C. § 601 *et seq.*, and under the regulations promulgated pursuant thereto, 45 C.F.R. § 233.11(a)(5) and 29 C.F.R. § 56.4(a)(8), Gloria was exempted from any work requirement as a prerequisite to receiving AFDC; the trial court further found that the provisions of the Indiana manual which disqualify Gloria from receiving AFDC on account of the state's work requirement directly conflict with the federal provisions. Accordingly, the trial court declared the relevant portions of the Indiana manual to be unconstitutional as violative of the supremacy clause.

The State raises the following issues for review:

I.  Whether §§ 353.15 and 353.16 of the Indiana AFDC Manual violate Article 6, § 2 of the U.S. Constitution; and

II. Whether the trial court erred in finding that but for the imposition of the Indiana AFDC Manual provisions, Gloria and her children were entitled to benefits of $200 per month.

I.

The State first argues that federal case law has altered the effect of the statutes and regulations cited above; thus, continues the State, although the federal statutory and regulatory provisions would appear to exclude Gloria from the WIN work requirement, such decisions as

*New York Department of Social Services v. Dublino* (1973), 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688, and *Jeffries v. Sugarman* (2d Cir., 1973), 481 F.2d 414, allow the states to impose work requirements which conflict with the federal requirements. We disagree.

In determining whether the provisions of the manual violate the supremacy clause, we begin with 42 U.S.C. § 602(a)(19)(A)(v):

"(a)   A State plan for aid and services to needy families with children must

* * *

(19)   provide—

(A)   that every individual, as a condition of eligibility for aid under this part, shall register for manpower services, training, and employment as provided by *regulations of the Security of Labor,* unless such individual is—

* * *

(v)   *a mother or other relative of a child under the age of six who is caring for the child . . .*"

29 C.F.R. § 56.4(a)(8), promulgated by the United States Department of Labor, provides that:

"§ 56.4 Registration and exemptions of AFDC applicants.

(a)   The Income Maintenance Unit of the local welfare agency, as agents of the RMA, shall register AFDC applicants and recipients for manpower services, training and employment as required under section 402(a)(19)(A) of the Act. It shall determine whether the applicant or recipient and members of his family are required to register as a condition for receiving AFDC benefits. Each individual must register unless he is—

* * *

(8)   A mother or other caretaker relative of a child under age 6, with proof of age and relationship; . . ."

Furthermore, 45 C.F.R. § 233.11(a)(19) provides that:

"A State plan under Title IV-A of the Social Security Act must provide that:

(a)   All applicants and recipients who are required to register by section 402(a)(19)(A) of the Act shall register for manpower ser-

vices, training, and employment as a condition of eligibility for AFDC, except as otherwise provided under paragraph (b) of this section:

(b)  The Income Maintenance Unit (IMU) of the State or local welfare agency shall determine which AFDC applicants and recipients are exempt from registration and which are required to register as a condition of eligibility for AFDC benefits, based on the following criteria:   Each AFDC applicant and recipient shall register unless he is:

\* \* \*

(8)  A mother or other caretaker relative of a child under age 6; . . ."

We believe that the meaning and intent of the federal provisions are quite clear. We do agree with the State that *Dublino* and *Jeffries* hold that the states have wide latitude in formulating their benefit programs; we further agree that these cases hold that the federal government has not preempted the field in this particular area.

In *Dublino* the District Court had held that state work programs were preempted by federal statutes and regulations. The United States Supreme Court reversed, holding that the federal provisions had not preempted the entire field of work requirements. Nevertheless, the Supreme Court went on to hold as follows, at 413 U.S. 422:

"We thus reverse the holding below that WIN pre-empts the New York Work Rules. Our ruling establishes the validity of a state work program as one means of helping AFDC recipients return to gainful employment. *We do not resolve, however, the question of whether some particular sections of the Work Rules might contravene the specific provisions of the Federal Social Security Act.*

This last question we remand to the court below. That court did not have the opportunity to consider the issue of specific conflict between the state and federal programs, free from its misapprehension that the Work Rules had been entirely pre-empted. . .

\* \* \*

We deem it unnecessary at the present time to intimate any view on whether or to what extent particular provisions of the Work Rules may contravene the purposes or provisions of WIN. Such a determination should be made initially by the court below, con-

sistent with the principles set forth in this opinion.[29]" (Emphasis added.)

The court further stated in its footnote:

"29.   In considering the question of possible conflict between the state and federal work programs, the court below will take into account our prior decisions. Congress 'has given the States broad discretion,' as to the AFDC program, *Jefferson v. Hackney*, 406 U.S. 535, 545, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285 (1972); see also *Dandridge v. Williams*, 397 U.S., at 478, 90 S.Ct., at 1158; *King v. Smith*, 392 U.S. 309, 318-319, 88 S.Ct. 2128, 2133-2134, 20 L.Ed.2d 1118 (1968), and '[s]o long as the State's actions are not in violation of any specific provision of the Constitution or the Social Security Act,' the courts may not void them. *Jefferson, supra*, at 541 of 406 U.S., at 1729 of 92 S.Ct. Conflicts, to merit judicial rather than cooperative federal-state resolution, should be of substance and not merely trivial or insubstantial. *But if there is a conflict of substance as to eligibility provisions, the federal law of course must control. King v. Smith, supra; Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972)." (Emphasis added.)

We believe that the holding in *Dublino* is that the federal WIN program does not preempt all state work rules; however, as the opinion itself clearly shows, whenever a conflict develops between federal and state provisions, the federal provisions must prevail.[3] We therefore hold that §§ 353.15 and 353.16 of the Indiana AFDC manual are void insofar as they contradict the federal statutes and regulations cited above.

## II.

The State next contends that regardless of the imposition of the state AFDC manual provisions, Gloria still would not be eligible to register for WIN; thus, since Gloria could not qualify for WIN, she could not claim protection of federal statutory and regulatory provisions, and she would not be entitled to the additional $75 incentive payment per month. We disagree. The federal statutory and regulatory exclusion of Gloria from the requirement to register for WIN means that the State cannot force her to register for that program; however, this does not prevent

---

3. The holding in *Jeffries* is essentially the same.

her from registering if she so desires. For example, 29 C.F.R. § 56.4(f) provides:

"All persons exempt in accordance with criteria set forth in paragraph (a) of this section may volunteer for registration for manpower services, training, or employment . . ."

Thus Gloria was qualified to register for WIN if she so desired; she accordingly was entitled to the full $200 per month.

Finding no reversible error, we affirm the judgment of the trial court.

Affirmed.

Lowdermilk and Robertson, JJ., concur.

NOTE—Reported at 383 N.E.2d 1091.