In re the Marriage of Guy SUTTON, Appellant–Respondent,

v.

Mary SUTTON, Appellee–Petitioner.

No. 37A05–0112–CV–551.

Court of Appeals of Indiana.

Aug. 6, 2002.

Mark Van Der Molen, Merrillville, IN, Attorney for Appellant.

Robert Randle, Rensselaer, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Respondent Guy Sutton ("Husband") appeals the trial court's support order in favor of Appellee–Petitioner Mary Sutton ("Wife"). We reverse in part, and remand with instructions in part.

### Issues

Husband raises four issues on appeal, which we restate as follows:

I. Whether the trial court erroneously denied Husband's petition to emancipate his eldest daughter;

II. Whether the trial court abused its discretion when it denied Husband's motion for modification of child support and imposed an additional monthly obligation on

Husband for the eldest daughters' educational expenses;

III. Whether the trial court abused its discretion by finding Husband in contempt for failure to comply with a support order; and

IV. Whether the trial court abused its discretion when it ordered Husband to pay Wife's attorney fees based upon its contempt finding.

## Facts and Procedural History

Husband and Wife have four children, Karine Sutton ("Karine"), born December 6, 1979; Lindsay Sutton ("Lindsay"), born September 7, 1981; B.S., born October 4, 1987; and K.S., born February 12, 1998. The parties have been divorced since 1995. The dissolution decree granted Wife custody of the parties' four children, subject to Husband's right to visitation. Husband was obligated to pay child support. The last child support ordered by the trial court was on February 12, 1998, pursuant to Wife's petition to modify support. That order provided in part as follows:

With regards to the issue of modification of support, the Court finds that the Husband earns gross income in the sum of $960.00 per week, and that the Wife earns gross income in the sum of $601.00 per week. Further, that the Wife pays health insurance premiums for the parties' minor children in the sum of $25.00, leaving the Wife with gross income in the sum of $576.00 per week. Further, that the combined gross income of the parties is in the sum of $1,536.00 per week, with the Husband earning 63 percent of said income and the Wife earning 37 percent of the same.

The Court further finds that based upon said income, the Indiana Child Support Guidelines provide for support for four children in the sum of $455.00 per week. Further, that the Husband's 63 percent of said support is in the sum of $287.00 per week.

The Court further finds that Husband's support obligation should be reduced by 10 percent for regular visitation, and that therefore the Husband should pay to the Clerk of this Court, for the use and benefit of the Wife as support for the parties' minor children, the sum of $258.00 per week, with the first of said weekly payments to be due on Friday, February 13, 1998, and a like sum due each Friday thereafter until further order of the Court.

(App. 31.) At the time of this support order Husband was employed as an electrician with Mars Electric.

Following the trial court's entry of the above support order, Husband left his job with Mars Electric to work as a self-employed electrician. As a self-employed electrician, Husband generated only $1,865.00 in income during the year of 1999, and $1,290.00 in 2000. During this period of time, Husband relied on a personal injury settlement of approximately $170,000.00 to support himself and pay child support.[1] In 2001, Husband obtained employment with Szany Electric earning $18.00 an hour.

While living in Wife's home, the parties' eldest daughter, Karine, gave birth to a child in October 1999. Karine moved out of Wife's home in September 2000 Karine turned twenty-one years of age on December 6, 2000. Karine is employed part-time and has attended college since August of 1998, taking nine credit hours a semester. She is currently in her junior year. The majority of Karine's tuition is paid for through scholarships and Pell grants.

1. The record is otherwise silent regarding Husband's personal injury and settlement.

The parties' next oldest child, Lindsay, lives with Wife while working twenty hours a week at $7.00 an hour and attending college part-time. Lindsay also receives a Pell grant that pays for tuition only. Lindsay and Wife cover the additional educational expenses.

On October 23, 2001, the trial court conducted a hearing on Husband's petition for emancipation and modification, and Wife's contempt citation that alleged Husband willfully refused to pay support. At the time of this hearing, Husband was working forty hours a week as an electrician at a rate of $18.00 an hour, and Wife was averaging forty hours a week working as a registered nurse at a rate of $19.50 an hour. The trial court's order read in part as follows:

> The Court ... now finds that the Husband's earning ability is the same now as it was when the last support order was entered. Further, that he has had the benefit of a personal injury settlement of approximately One Hundred Seventy Thousand Dollars ($170,000.00) in the interim. Therefore, child support should remain unchanged, the Husband should receive no visitation credit for the reason he has not visited on any regular schedule, and the tax exemptions claimed by the parties for their minor children as dependents should remain unchanged. The Court further finds that neither the oldest child, Karine Sutton, or the parties' second child, Lindsay Sutton, should be emancipated, as both are working part-time and attending college full[-]time and receive grants and scholarships. However, neither child would be able financially to complete her undergraduate degree without parental financial support. Therefore, Husband's Petition for Emancipation and Modification of Support should be overruled and denied.

(App. 3–4.) The trial court further ordered that educational expense payments to the parties' two oldest children be paid directly to them. The trial court further found Husband in contempt for a $780.71 child support arrearage, for which the trial court ordered that $100.00 a month be added to his support obligation until paid in full. Lastly, the trial court ordered Husband to pay Wife's attorney fees in the amount of $1,465.55.

Husband appeals the trial court's order.

## Discussion and Decision

### I. *Emancipation*

■ Husband argues that "[b]y operation of law, Husband's duty of support ceased when Karine turned twenty-one (21)." Brief of Appellant at 9. We agree.

#### Standard of Review

■ At the end of the parties' October 23, 2001 hearing the trial court rendered its judgment from the bench. In doing so, the trial court gratuitously entered findings of fact and conclusions of law. The trial court's findings control only as to the issues they cover and a general judgment standard will control as to issues upon which the court has not found. *See Mullin v. Mullin,* 634 N.E.2d 1340, 1341 (Ind. Ct.App.1994). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

#### Rule of Law

■ What constitutes emancipation is a question of law, but whether there has been an emancipation is a question of fact. *Young v. Young,* 654 N.E.2d 880, 883 (Ind. Ct.App.1995). Emancipation of a child cannot be presumed; it must be established by competent evidence. *Id.* The burden of producing such competent evidence falls on the party asserting emanci-

pation. *Id.* Generally, Indiana Code section 31–16–6–6 provides that "a parent's child support obligation terminates when a child is emancipated or reaches age 21, except in certain circumstances." *Lea v. Lea,* 691 N.E.2d 1214, 1215 (Ind.1998). Specifically, the Indiana Code provides:

(a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:

(1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.

(2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.

(3) The child:

(A) is at least eighteen (18) years of age;

(B) has not attended a secondary or postsecondary school for the prior four (4) months and is not enrolled in a secondary or post-secondary school; and

(C) is or is [sic] capable of supporting himself or herself through employment.

In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.

(b) For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:

(1) has joined the United States armed services;

(2) has married; or

(3) is not under the care or control of:

(A) either parent; or

(B) an individual or agency approved by the court;

the court shall find the child emancipated and terminate the child support.

Ind.Code § 31–16–6–6.

*Analysis*

Wife argues that "[i]t was proper for the Trial Court to award support for the oldest child … because the Support Order is in the form of educational expenses." Brief of Appellee at 5. We disagree.

■ The trial court does have authority and discretion to award post-secondary educational expenses and to determine the amount of such an award. Child Supp. G. 6 Commentary. However, educational expenses are addressed separately from child support. *See* Ind.Code § 31–16–6–2. Furthermore, while a trial court is not precluded from making contemporaneous findings regarding emancipation and educational expenses, a party request for contribution to educational expenses should be initiated before the emancipation determination. *Marshall v. Marshall,* 601 N.E.2d 9, 12 (Ind.Ct.App.1992); *see also Jenkins v. Jenkins,* 687 N.E.2d 256, 259 (Ind.Ct. App.1997) (holding in part that " 'a trial court may not first make an order for educational needs when the petition seeking such relief is filed after the child's emancipation.' ") (quoting *Donegan v. Donegan,* 605 N.E.2d 132, 134 (Ind.1992)). In the instant case, Wife did not petition the trial court for post-secondary edu-

cational expenses.[2] Moreover, Karine, who had reached the age of twenty-one at the time Husband filed his petition to emancipate, moved out of Wife's home in September 2000, was employed part-time, and had the majority of her college tuition paid for through scholarships and Pell grants, should have been declared emancipated by the trial court. As such, the trial court erroneously ordered continued support for Karine from Husband—be it in the form of child support or educational expenses. Karine was emancipated, by operation of law, on her twenty-first birthday.

## II. *Child Support and Education Expenses*

■ Next, Husband contends that his support for the other three children should be modified. We agree.

### *Rule of Law*

■ Child support awards may be modified only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind.Code § 31–16–8–1. In the instant case, where one of several children covered by a support order is emancipated, the obligated party under the support order must petition for a modification to reduce the amount of the support obligation. *Kirchoff v. Kirchoff,* 619 N.E.2d 592, 596 (Ind.Ct.App.1993), *disapproved of on other grounds by Merritt v. Merritt,* 693 N.E.2d 1320, 1324 n. 4 (Ind.Ct.App. 1998). Otherwise, there is no relief for what would be an overpayment.

### *Analysis*

Here, Husband petitioned for modification of child support and the trial court, after determining that neither Karine nor Lindsay[3] would be emancipated, ruled that its previous child support order should remain unchanged. In addition, the trial court ordered Husband to pay $250.00 per month to Karine for college expenses and $100.00 a month for Lindsay's college expenses. However, this Court's determination of Karine's emancipation causes a change in circumstances so substantial and continuing as to necessitate a modification of child support.

■ As for the trial court's order for Lindsay's college expenses, Wife did not petition for those expenses and, as previously noted, it was error to treat those

2. The only reference to educational expenses in the parties' pleadings that precipitated the October 23, 2001 hearing was in Husband's petition for emancipation and modification, wherein he alleged:

That the parties' child, LINDSAY SUTTON, born September 7, 1981, age 18, graduated from high school in May 2001, has been employed and contributing to her own support. Lindsay has plans to attend college part-time in the fall of 2001, but

remains living at home with her Mother. Therefore, the child support order for Lindsay should be modified to reflect her partial emancipation and provide for the allocation of college expenses, if appropriate. (App. 35–36.)

3. On appeal, Husband does not contest the trial court's emancipation ruling regarding Lindsay.

expenses as simply an extension of a child support modification. Nevertheless, the issues of a case are not necessarily determined by the pleadings, but can be altered by the evidence adduced at trial. *See Glover v. Torrence*, 723 N.E.2d 924, 934 (Ind. App.2000). Specifically, Indiana Trial Rule 15(B) provides in part as follows:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues.

Here, where the parties argued the issue of Lindsay's educational expenses, absent a petition for educational expenses, Husband and Wife gave their implied consent to treat the issue as if it had been properly pled. In the wake of this Court's emancipation of Karine, and recognizing that the trial court remains in the best position to re-calculate both the child support for the two youngest daughters and the child support and possible college expenses which may apply to Lindsay, we proceed by providing a legal framework for such re-calculation on remand.

▮▮▮▮ The trial court's review of whether to enter an order for post-secondary education expenses is to be conducted within the statutory framework set out in Indiana Code § 31–16–6–1. *Claypool v. Claypool*, 712 N.E.2d 1104, 1109 (Ind.Ct. App.1999). In this regard, the "standard of living the child would have enjoyed had the marriage not been dissolved" means whether and to what extent the parents, if still married, would have contributed to the child's college expenses. *Id.* If the

trial court determines that an order for college expenses is appropriate, the parents' contributions shall be roughly proportional to their respective incomes. *Id.* More specifically, Indiana Code section 31–16–6–2(a)(1)(B) contemplates that the trial court should take into account the child's reasonable ability to contribute to educational expenses through work and sources of financial aid, including student loans. The Indiana Child Support Guidelines also address student contribution to higher education costs:

> [T]he court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.

> If the Court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These sources of assistance should be credited to the child's share of the educational expense.

Ind. Child Supp. G. 6. Lastly, we would remind the parties of the necessity of filing both a Post–Secondary Educational Support Worksheet along with the Child Support Obligation Worksheet for the trial court's consideration. *See* Child Supp. G. 6 Commentary (stating in part that the Post–Secondary Educational Support Worksheet and Child Support Obligation Worksheet "must be filed with the court" in situations where one child is attending college and the other child(ren) live at home). With the foregoing parameters in mind, we remand the issues of child support and possible post-secondary edu-

cational expenses for Lindsay to the trial court.[4]

### III. *Contempt*

 Husband further contends that his failure to timely pay an installment of child support is not sufficient grounds for contempt. We agree.

### *Standard of Review and Rule of Law*

 Whether a party is in contempt is a matter left to the sound discretion of the trial court, and we reverse the trial court's finding of contempt only if it is against the logic and effect of the evidence before it or is contrary to law. *Mosser v. Mosser*, 729 N.E.2d 197, 199 (Ind.Ct.App. 2000). When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses, and unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed. *Piercey v. Piercey*, 727 N.E.2d 26, 31–32 (Ind.Ct. App.2000). "In order to be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something." *Id.* at 32 (citing *Adler v. Adler*, 713 N.E.2d 348, 354 (Ind.Ct.App.1999)). To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with "willful disobedience." *Id.* However, simply establishing the existence and knowledge of an arrearage may not amount to "willful disregard of a court order." *See Topolski v. Topolski*, 742 N.E.2d 991, 995 (Ind.Ct.App.2001).

### *Analysis*

The child support order that existed prior to the October 23, 2001 hearing unambiguously stated the amount owed, when it was to be paid, and that it was in place until further order of the trial court. Moreover, the child support order was an indivisible, in gross support order, which refers to the situation where a parent is ordered to pay a specified sum of undivided support for more than one child. *See Sterrett v. Hartzell*, 640 N.E.2d 74, 77 (Ind.Ct.App.1994). Under this type of order, the parent must pay the total support amount until the support payments are modified by court order or all of the children are emancipated or reach the age of twenty-one years. Ind.Code § 31–1–11.5–12(d). Here, Husband testified that he was behind in his recent support payments. As such, Husband is clearly in arrears and that arrearage should be paid.

However, in the instant case, we do not find the amount of the arrearage, or Husband's admission of such, amount to willful disobedience or disregard. In Husband's testimony he acknowledged that he was approximately two weeks behind in his child support payments. This testimony did not deny the existence of an arrearage or otherwise indicate a refusal to pay. Moreover, the record indicates that Husband regularly paid the full amount of child support owing in a timely manner and only recently fell behind. In light of Husband's overall child support record, his acknowledgement of the current arrearage, and the relatively small amount of the arrearage, we find the trial court's finding of contempt to be against the logic and effect of the evidence before it.

### IV. *Attorney Fees*

 Lastly, Husband argues that he should not be responsible for paying Wife's attorney fees. We agree, and reverse the decision of the trial court in its award of attorney fees.

---

4. Subject to the discretion of the trial court, its analysis may or may not necessitate reassessing Husband and Wife's respective incomes.

## Rule of Law

 The determination of the payment of attorney's fees in proceedings to modify a child support award is within the sound discretion of the trial court and will be reversed only upon a showing of a clear abuse of that discretion. *Searcy v. Searcy,* 583 N.E.2d 1216, 1221–22 (Ind.Ct.App. 1991). In assessing attorney fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award. *Claypool,* 712 N.E.2d at 1110. In addition, any misconduct on the part of one of the parties that directly results in the other party incurring additional fees may be taken into consideration. *Id.*

## Analysis

Other than the trial court's finding of contempt, the record and the trial court's order remain silent as to what factors supported an award of attorney fees to Wife. Given the near parity in the parties resources and earning abilities, this Court's reversal of the trial court's contempt finding, and the meritorious nature of Husband's arguments at the trial court level and on appeal, we reverse the decision of the trial court to award attorney fees to Wife.

Reversed in part, and remanded with instructions in part.

NAJAM, J., and ROBB, J., concur.